CITY OF WEST POINT, MISS. *v.* MEADOWS, et al.

No. 41103        April 6, 1959        110 So. 2d 372

*Thos. J. Tubb, Harvey S. Buck,* West Point, for appellant.

*B. H. Loving, Lenore L. Prather, A. M. Edwards, Jr.,* West Point, for appellees.

Lee, J.

Mrs. Annie Mae Meadows and husband, L. O. Meadows, sued the City of West Point, Mississippi, to recover damages on account of the way and manner in which the defendant had operated its garbage dump for the six-year period immediately preceding November 5, 1957. The declaration set out in detail how the operation of the same constituted a nuisance. Issue was joined; and the jury returned a verdict for the plaintiffs in the sum of $1,325. From the judgment entered thereon, the City appealed.

The plaintiffs owned fourteen acres of land on which their home was situated. Immediately to the south, the City owned about twenty acres on which its garbage dump, situated on the site of an old brickyard, for which an excavation had been made, was located. The garbage, consisting of paper, boxes, trash, cans, food refuse, and the carcasses of dead animals, principally, cats, dogs, chickens, hogs, and parts of cattle, had been dumped therein through the years. City trucks made collections daily except Sundays. In addition citizens also made their own deliveries to the dump. The refuse was also burned daily except Sundays, and the portion which did not burn was in turn covered by a bulldozer. Smoke and unpleasant odors were created, and, when the wind was from the south, these spread onto the plaintiff's property and into their home. Flies and mosquitoes were prolific and abnormally infested the home. On occasions there was greenish and stinking water in and about the dump. As a result of the smoke, a greasy coating formed on the outside of the home. Stray dogs constantly brought bones, hoofs, tails, horns, etc. of cattle from the dump and left them in the plaintiffs' yard; and, on occasions, they gathered up basketfuls of such refuse.

Fire, on occasions, spread onto the plaintiffs' property and damaged or destroyed their shrubbery, berry vines, flowers, fruit trees, and fences. The plaintiffs, on a number of occasions, complained to the city officials about the existing conditions.

The appellant has assigned and argued three alleged errors of the trial court, namely, (1) that its requested peremptory instruction should have been sustained because the City, in the operation of its garbage dump, was exercising a governmental, not a corporate or private, function, and therefore was not liable; (2) the court erred in admitting seven photographs of the garbage dump; and (3) the court erred in admitting the testimony of Sam Wilhite, a witness for the appellees, that he had protested to the city officials about the garbage dump as a nuisance.

This Court has held that the hauling of dirt and trash is a corporate or private function, and that a city is liable for the negligence of its employees while so engaged. Pass Christian v. Fernandez, 100 Miss. 76, 56 So. 329. See also 63 C. J. S., Municipal Corporations, Section 770 b (2), pp. 69-70. The appellant concedes this to be true, but insists that the case is wrong and should be overruled. There is a division among the authorities on this question. See 63 C. J. S., Municipal Corporations, Section 777 b, pp. 85-86. This Court is already committed to the doctrine of liability in such a case, and it finds no sound reason to hold now that such doctrine is mischievous, or that the above case should be overruled.

Besides, municipalities are liable for damages arising out of nuisances in the creation or maintenance of their sewerage systems. Thompson v. Winona, 96 Miss. 591, 51 So. 129; Ann. Cas. 1912 B 449; Hodges v. Town of Drew, 172 Miss. 668, 159 So. 298; City of Meridian v. Tingle, 226 Miss. 317, 84 So. 2d 389. Since the

results in those cases were of like kind and character as in the case now before the Court, there is no sound reason for the application of a different principle. See also Laurel Equipment Company v. Matthews, 218 Miss. 718, 67 So. 2d 258. ██ ██ In addition, the proof showed that the appellees sustained special damage over and above that to which the general public was exposed.

██ ██ One of the attorneys for the appellees, while investigating the case preparatory to filing suit, took seven photographs of the garbage dump. He testified positively that, as to each picture, it was ''a true and accurate representation of the scene and conditions'' that he saw before him when he took it. Other witnesses testified to the same effect and that such condition had prevailed during the time for which suit was brought. Consequently the photographs were properly admitted in evidence. Orr v. Columbus and Greenville Railway Company, 210 Miss. 63, 48 So. 2d 630; Gulf, Mobile & Ohio Railroad Company v. Golden, 221 Miss. 253, 72 So. 2d 446.

██ ██ The witness Wilhite, in protesting to the city authorities, brought to their attention actual notice of the obnoxious condition at the garbage dump. In City of Hattiesburg v. Hillman, 222 Miss. 443, 76 So. 2d 368, where the dead tree was left standing for nearly two years, there was a disputed issue as to whether the City had actual knowledge of the dangerous condition of the tree. But the opinion said that ''even without actual notice the danger should have been ascertained in a reasonable time,'' and that ''lack of knowledge for such a long period can not be excused.'' However, in the present case, evidence that a citizen other than the plaintiffs protested against the obnoxious condition of the city's facility, was clearly admissible to show that the officials had actual notice of the same. Therefore there was no error in the admission of this evidence.

From which it follows that the judgment of the court must be, and it is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.